IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS RIEL, et al.,
       Plaintiffs

   v.            CIVIL ACTION NO. 04-90 ERIE

CITY OF BRADFORD,
       Defendant

SETTLEMENT CONFERENCE

Proceedings held before the HONORABLE

SEAN J. McLAUGHLIN, U.S. District Judge,

in Judge's Chambers, U.S. Courthouse, Erie,

Pennsylvania, on Friday, June 4, 2004.

APPEARANCES:
      PHILIP B. FRIEDMAN, Esquire, appearing on behalf
      of the Plaintiffs.

      WITOLD J. WALCZAK, Esquire, appearing on behalf
      of the Plaintiffs.

   RICHARD A. LANZILLO, Esquire, appearing on behalf of the Defendant.

   TRACEY D. JONES, Esquire, appearing on behalf of the Defendant.

   Ronald J. Bench, RMR - Official Court Reporter

2

1   P R O C E E D I N G S

2

3  (Whereupon, the on the record proceedings began at

4 10:50 a.m., in Judge's Chambers.)

5

6  THE COURT: Let's go on the record here. After some

7 further discussion of the issues in this case, it appears that

8 some of the issues have now been mooted by amendments to the

9 ordinance. To that extent, the focus is a lot narrower now.

10 It is my intention to schedule a supplemental briefing schedule

11 on the remaining issues in this case, which essentially

12 represent, in my view, facial challenges to 178 and 125. Off

13 the record we had a discussion as to what the remaining issues

14    might be. It seems to be most productive for me, first of all,

15    to hear from the plaintiffs' counsel, who can indicate on the

16    record the issues that he would intend to address in a

17    supplemental brief in support of his request for injunctive

18    relief. So what would those be?

19              MR. WALCZAK: First, whether or not the two

20    ordinances at issue are content-based or content-neutral.

21    Second, whether the permit system in the context of private

22    property signs is constitutional. And, third, if a permit

23    system can be utilized.

24              THE COURT: Not to interrupt you, but when you say a

25    permit system in terms of private property signs, we're talking

3

1    now under both 125 and 178?

2              MR. WALCZAK: That's correct. And if a permit

3    system is legally permissible in the context under the First

4    Amendment, is Bradford's permit system constitutional. In

5    areas where we believe that the ordinances are infirm are, one,

6    the criteria under --

7              THE COURT: Subparagraph 12 of 125?

 8           MR. WALCZAK: Right 125, are too vague. The

 9  timeframes and procedures for getting approval are too long, to

10  allow council to take far too much time in order to approve the

11  signs.

12           THE COURT: Not to interrupt you, that particular

13  concern, could that be addressed, in your view, by language

14  within the statute which set specific timeframes so, in other

15  words, I don't have to go back to the record here, it could

16  simply be a facial challenge, is that right?

17           MR. WALCZAK: That's correct. And that challenge,

18  it is a facial challenge, it is irrelevant whether -- how

19  Bradford has actually applied that in the past. It's our view

20  that the court looks at what the law allows council to do, how

21  much time it allows council to take. We have plenty of case

22  law to support that.

23           MR. FRIEDMAN: In addition to that issue, your

24  Honor, the ordinance was amended after the testimony regarding

25  the timeframes. So the testimony is probably not even

                                    4

 1  relevant.

2       THE COURT: That's right, we're shooting at a

3   different statute right now.

4       MR. WALCZAK: I think sort of whether Bradford's

5   ordinance is constitutional if you can have a permit, does it

6   make sense to allow signs bigger than 12 square feet. I guess

7   this is under 178.

8       THE COURT: It is.

9       MR. WALCZAK: Whether you can have a permitting

10  system for signs that are bigger than 12 square feet. That's

11  it, I think that's the issues.

12      THE COURT: Okay. Then we all agree now that all

13  the work that has been done in conjunction with the initial

14  hearing and testimony, while necessary at the time, is now not

15  necessary, given the facial challenge; do you agree with that?

16      MR. LANZILLO: Not entirely, your Honor.

17      THE COURT: Are there disputed issues of fact?

18      MR. LANZILLO: I don't believe there are.

19      THE COURT: That's fine. My point being I don't

20  have to do any fact finding in connection with that preliminary

21  injunction hearing, right -- otherwise, I have to finish the

22  preliminary injunction hearing. See what happened here is,

23  through no one's fault, we started a hearing where I was

24  tilting at one windmill, that windmill is no longer extent, we

25  now have a new one.

5

1           MR. LANZILLO:  Your Honor, to the extent that you --

2           THE COURT:  Let me put it this way.  You can put in

3  anything you want about the hearing, but I don't see, in my

4  view could I not decide this case without the benefit of ever

5  having that hearing at all?

6           MR. LANZILLO:  I don't think so.  And the reason I

7  say that, your Honor, there was relevant evidence concerning

8  the interests of, the governmental interests at issue that I

9  believe are relevant from an evidentiary standpoint.

10          THE COURT:  Which would be, for instance, safety and

11  esthetics?

12          MR. LANZILLO:  Right.

13          THE COURT:  Does the ACLU accept, for purposes of my

14  discussion here, that the purported interests are, insofar as

15  they may relate to these esthetics and safety -- that's what

16  they said?

17          MR. WALCZAK:  I think the court can as a matter of

18   law.

19          THE COURT:  Your point is even if I assume that,

20   that doesn't help him?

21          MR. WALCZAK:  I think the court can as a matter of

22   fact say esthetics and safety are significant governmental

23   interests.

24          MR. LANZILLO:  The only other factual point, your

25   Honor, I'm not sure, I believe that the court may consider

6

1   evidentiary matters in assessing the precision of the language

2   of some of these ordinances.  Mr. Walczak may take a different

3   position on that, but I would anticipate referencing in my

4   brief this inventory, for example, which is out there and

5   utilized.  There may be a legal issue as to whether you can

6   refer to what I'll call parole sources or not.  I've seen case

7   law where that has been considered.  That will be something

8   outside the face of the ordinance.

9          THE COURT:  Put it this way, I'm not trying to

10   restrict what anybody does, I'm just trying to get an idea.

11   Whatever you do in your brief, I'll see it in your brief.

12　Here's the deal.  We're now into summer.  How much time do you

13　need to do this brief?

14　　　　MR. WALCZAK:  Can I suggest something, your Honor.

15　First of all, I agree with Mr. Lanzillo, it hasn't happened all

16　that often, I wanted to make a point of that, I do think we may

17　want to refer to the record as well.

18　　　　THE COURT:  Everybody can, I'm not saying you can't.

19　　　　MR. WALCZAK:  I also think to the extent I

20　understand Mr. Lanzillo's last point, to the extent they have

21　something in writing that governs the decision-making process,

22　we would simply ask that they append whatever that is to their

23　brief.  And I think it's okay to use that, we'll take our shots

24　at it.  Could I suggest that we do simultaneous briefs.  We

25　attack, they defend, and then we each do one reply.

7

1　　　　THE COURT:  You both file your briefs at the same

2　time?

3　　　　MR. WALCZAK:  Almost like cross-motions for summary

4　judgment.

5　　　　THE COURT:  Hang on a second.

6         MR. LANZILLO: I would request that my worthy

7   opponents go first. They have been somewhat of a moving

8   target. I need to know what is being inferred, rather than

9   trying to defend everything.

10         THE COURT: I think that's right, frankly, it's

11   helpful for me, too. You go first -- do you have other pots on

12   the fire right now besides this case?

13         MR. WALCZAK: Unfortunately, yes, your Honor, I do.

14         THE COURT: I would really like to try to move this

15   case. Is 20 days too short?

16         MR. WALCZAK: If we can have until the 28th, I would

17   like 24 days, that's a Monday. If we need that weekend, we

18   would have that weekend.

19         THE COURT: Then your brief is due on the 28th of

20   June. You get a reply in in 20 days.

21         MR. LANZILLO: Your Honor, can I ask it be 20 days

22   and whatever Monday follows that?

23         THE COURT: You get the benefit of the next Monday,

24   you get the benefit of the weekend.

25         MR. WALCZAK: 20 days would be the 18th, which is a

1  Sunday, July 18th.  So the next Monday would be the 19th.

2          MR. LANZILLO:  That's fine.

3          THE COURT:  And then I think that I will determine,

4  once I see the brief in opposition, whether there's any need

5  for a reply brief.  This thing has been briefed extensively

6  already in some respects.  All right, I think that's as much as

7  we can do.

8          MR. LANZILLO:  One last point -- we would like to

9  try to arrive at some agreement to adjust the Consent Order.

10  What happened is we have all sorts of applications for sign

11  permits backing up, people haven't been able to put their signs

12  up.  They want to follow the process, but they're afraid to.

13          THE COURT:  I have this vision of people holding

14  signs with the line going all around the block.

15          MR. LANZILLO:  We've got 15 in the works.  I guess

16  what I'd propose is to agree to continue the Consent Order as

17  to the plaintiffs in every respect and allow us to get on with

18  business with respect to our other folks.

19          THE COURT:  Have you seen this Consent Order yet?

20          MR. FRIEDMAN:  No.

21      THE COURT: Why don't you read it?

22      MR. LANZILLO: I'll note generally it's very similar

23  to the original, with the exception it limits the scope to the

24  plaintiffs in this case. At paragraph one it states "defendant

25  City of Bradford, together with its employees, representatives,

9

1   agents, servants, assigns and all others acting on behalf or in

2   concert with the City, is enjoined from issuing citations,

3   removing signs or otherwise enforcing any provisions in

4   Bradford Code Chapter 178 and Bradford Code Section 125.15.E,"

5   against the plaintiffs in this action, "that either prohibit

6   signs based on content or that condition display on securing a

7   permit, paying a fee or posting a bond, including but not

8   limited to the following sections: 178-3, 178-4, 178-6, 178-7,

9   178-9, 178-11, 178-15, 178-16, 178-27, 178-31, 178-32, 178-33,

10  178-34 and 125.15.E.

11      Two. Nothing in this Consent Order restricts

12  Bradford's authority to take necessary and appropriate action

13  to address signs or displays that pose an imminent threat to

14  public safety."

15            THE COURT: Let's cut to the chase, how is this

16   Consent Order different than the previous one I signed off on?

17            MR. LANZILLO: The only material difference here is

18   that this one is limited to the plaintiffs in this case --

19            THE COURT: Where the other one was a complete ban

20   on enforcing it against anybody?

21            MR. LANZILLO: Yes, your Honor. The other

22   difference, we're now talking about a substantially modified

23   set of ordinances. The original ordinances that were in place

24   are gone.

25            THE COURT: All right. Let's go off the record a

                                10

1   second.

2            (Discussion held off the record.)

3            THE COURT: Let's go on the record. The parties are

4   trying to hammer out in broad brush an outline, a mutually

5   acceptable Consent Order. Given the stage of this case, what

6   do you want to say?

7            MR. LANZILLO: What we would propose to do is modify

8   the current Consent Order to provide that up until the time the

9  court rules on the constitutionality of the subject ordinances,

10  the City of Bradford will not cite any violations, cite anyone

11  for any violations of the identified provisions, the provisions

12  identified in the original Consent Order.  And in the event the

13  ordinances are declared constitutional, those parties who have

14  erected nonconforming signs during the pendency of the Consent

15  Order will be given reasonable notice and an opportunity to

16  conform, prior to any citations being issued against them.

17        MR. WALCZAK:  I'm interested with the fact that

18  people are confused about what they can do.  And part of the

19  confusion may be this serial list of ordinance sections which

20  tells the average person nothing about what they can and can't

21  do.  I think I drafted that, so I'll take responsibility for

22  that.  Can we add some specificity to identifying provisions as

23  to what people will or won't get cited for?

24        MR. LANZILLO:  I'm not sure I understand.

25        MR. WALCZAK:  They will not cite, the City of

11

1  Bradford will not cite anyone for not going through the permit

2  process.

3          MR. LANZILLO: During the pendency of the court

4   order.

5          MR. WALCZAK: But nothing precludes the people from

6   applying or the City of Bradford from going through the

7   process.

8          MR. LANZILLO: That's acceptable, we can add that.

9          MR. FRIEDMAN: Would the City also agree to withdraw

10  the criminal citations that are pending against these people

11  now, it's just causing them some personal aftershock. They're

12  hanging out there, obviously, they're going to be withdrawn at

13  some point.

14         MR. LANZILLO: I think that's an issue we'd be

15  willing to address and consider, I'm not sure we would do it as

16  part of the Consent Order here, we're certainly agreeing not to

17  cite or pursue any enforcement action.

18         THE COURT: Who brought those charges?

19         MR. FRIEDMAN: The City through its code enforcement

20  officer.

21         THE COURT: As a procedural matter, I mean if the

22  City was inclined not to pursue those, then those would be

23  nolle-prosed, I presume, and they would disappear, independent

24  of this agreement. But perhaps there could be some language in

25  the agreement as well.  But that's something I gather you need

12

1  to talk to your client about?

2           MR. LANZILLO:  I think so.  It may become moot, that

3  may happen in the ordinary course as long as we have an

4  understanding that it's being done to facilitate the resolution

5  of the case.

6           MR. FRIEDMAN:  That's fine.

7           THE COURT:  Okay, off the record.

8           (Discussion held off the record.)

9

10           (Whereupon, at 11:20 a.m., the proceedings were

11  concluded.)

12

13                      - - -

14

15

16

17

18

19

20

21

22

23

24

25

13

1      C E R T I F I C A T E

         _ _ _ _ _ _ _ _ _ _ _

2

3

4

5    I, Ronald J. Bench, certify that the foregoing is a

6  correct transcript from the record of proceedings in the

7  above-entitled matter.

8

9

10

11

12  _____

13  Ronald J. Bench

14

15

16

17

18

19

20

21

22

23

24

25